# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs July 25, 2012

## STATE OF TENNESSEE v. JERRY RAY NORTON

**Appeal from the Criminal Court for Greene County**
**No. 11CR106     John F. Dugger, Jr., Judge**

**No. E2011-02370-CCA-R3-CD - Filed November 30, 2012**

Appellant, Jerry Ray Norton, challenges his conviction for driving under the influence, fourth offense. As grounds, he claims that the State's evidence did not prove that he operated a motor vehicle on a public roadway and that the officer's failure to file an accident report should have resulted in dismissal of the indictment. Following our review, we affirm the judgments of the trial court. However, we remand the case for entry of corrected judgments on count four, driving on a revoked license, third offense, and count five, driving under the influence, fourth offense, reflecting a disposition of count one, driving under the influence, and count two, driving on a revoked license. The corrected judgments should reflect merger of count one into count five and count two into count four. The trial court should also enter a judgment disposing of the third count of the indictment, violation of the implied consent statute.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed; Remanded**

ROGER A. PAGE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROBERT W. WEDEMEYER, JJ, joined.

Greg W. Eichelman, District Public Defender; Anita B. Leger, Assistant District Public Defender, Greeneville, Tennessee, for the appellant, Jerry Ray Norton.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; C. Berkeley Bell, Jr., District Attorney General; and Cecil C. Mills, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

A Greene County grand jury indicted appellant for driving under the influence, driving on a revoked license, violation of the implied consent statute[1], driving on a revoked license, third offense, and driving under the influence, fifth offense. The indictments were based on events that occurred on March 10, 2011. Appellant was found guilty of driving under the influence, fourth offense, and driving on a revoked license, third offense. The trial court imposed concurrent sentences of one year, seven months for driving under the influence, fourth offense, and eleven months, twenty-nine days for driving on a revoked license, third offense. Appellant filed a timely but unsuccessful motion for a new trial. This appeal follows.

The facts developed at trial established that law enforcement officers encountered appellant seated in the driver's seat of his truck with the key in the ignition. The truck was mired in mud on appellant's property adjacent to a state highway, and the odor of alcohol emanated from appellant.

The State called William Renner, an employee of Greeneville Light and Power, as its first witness. Mr. Renner testified that he was on call the night of March 10, 2011. He was traveling in freezing rain on the Old Asheville Highway in the evening hours in response to a call. He observed a vehicle, mired in mud, off the side of the road in what appeared to be a plowed field and stopped to render help, if needed. He approached the vehicle and encountered appellant in the driver's seat. Appellant asked Mr. Renner for a ride. Mr. Renner informed appellant that company policy prohibited him from giving a ride to a non-employee but that he would call someone to help him. Mr. Renner testified that he called either the sheriff's department or 9-1-1. Sergeant Glenna Estepp with the Greene County Sheriff's Department arrived at the scene shortly thereafter. Upon Sergeant Estepp's arrival, Mr. Renner and Sergeant Estepp walked over to appellant's vehicle. When Sergeant Estepp asked appellant if he had been drinking, appellant answered, "Yes." Mr. Renner then assisted Sergeant Estepp in escorting appellant, who is an amputee, to the police cruiser.

Sergeant Estepp testified that she was working a twelve-hour shift when she was dispatched to the Old Asheville Highway to investigate an accident. Sergeant Estepp explained that the Old Asheville Highway is a two-lane county highway. As she approached the scene, she noticed mud tracks on the roadway, consistent with vehicle tracks, leading

---

[1] The record is silent as to the disposition of this count of the indictment. Appellant, through counsel, filed a motion to suppress appellant's statements regarding implied consent but later withdrew the motion. There is no other mention of this count of the indictment in the record. For this reason, we remand this case for entry of a judgment as to this count.

down and ending where appellant's vehicle rested in the ditch next to the highway.  She testified that there had been a great amount of rain that week with flooding in some areas.

Sergeant Estepp recalled that when she arrived at the scene, she approached the vehicle and immediately detected an odor of alcohol "before [she] even got to the driver." She then observed appellant sitting in the driver's seat with the vehicle's key in the ignition. She asked him if he had been driving, and he answered, "Yes."  She asked him if he had been drinking, and he again answered, "Yes."  Sergeant Estepp observed what appeared to be a whiskey bottle propped on the floor of the vehicle and a brown bag appearing to contain another bottle of the same type.

Sergeant Estepp questioned appellant at the scene and advised him that it was obvious what had happened, at which time appellant became reluctant to cooperate and argumentative.  When Sergeant Estepp told appellant that she could see the direction he was traveling, "he just turned – looked at [her] and grinned . . . ."  She then offered appellant various appropriate field sobriety tests, which he refused.  From her observations, Sergeant Estepp determined "that [appellant] had been drinking and driving and consuming an intoxicant or other drug that impaired his ability to operate the vehicle in a safe manner upon the highways."  Next, Sergeant Estepp ran a driver's license check that indicated appellant's license had been revoked prior to the incident.  She transported appellant to the Greene County Detention Center.  Once inside, Sergeant Estepp read appellant the Implied Consent Advisement form.  He refused the test and signed the form to confirm his refusal.

On cross-examination, Sergeant Estepp admitted she did not know the location of appellant's driveway on the night of the incident.  She explained that "the mud tracks appeared to have begun as I came right [past] this driveway or out this driveway onto the highway."  Because of problems with the camera in her cruiser, Sergeant Estepp was unable to videotape the incident.  She did not complete an accident report but completed her warrants and an offense report.  Sergeant Estepp testified that when she approached appellant's truck, the engine was off, and the driver's side window was down.  She first detected the odor of alcohol when she was "about past the bed of the truck, getting to the driver's door."  Sergeant Estepp recalled that Officer Crum arrived at the scene shortly thereafter and relieved Mr. Kenner in escorting the appellant to the cruiser.

Mark Crum, a deputy with the Greene County Sheriff's Department, testified that it was no longer raining when he arrived at the scene and that by shining his spotlight, he saw a truck off the side of the road with some grass pushed down.  He stated, "[T]hat's where I thought the truck had gone off the side of the road."  He added that it looked "[l]ike tire tracks had went [sic] over the grass" and "like maybe the truck had maybe veered off the roadway."  Deputy Crum observed two clear bottles in appellant's truck labeled George

Dickel. He poured the liquid out on the ground beside the truck and placed the empty bottles back in the truck.

On cross-examination, Deputy Crum recalled, "[F]rom what I remember, it's like it went down, off the road, down the embankment and kind of got caught in the ditch, just sitting either straddled to the left, what I call the left wheels, the driver's side would be near the ditch line." He testified that the plowed area adjacent to the road was "[a] decent garden size, I'd say, I don't know, eighty to a hundred feet."

Patricia Ann Baughard, appellant's sister, testified regarding the family property and garden area in relation to the roadway. Ms. Baughard explained that the garden area ran alongside a drainage ditch next to the roadway and that a path ran by the edge of the garden between appellant's mobile home and his son's mobile home. On cross-examination, Ms. Baughard testified that appellant would occasionally drive on the road, but she had no knowledge of whether he was driving on the road on the night of the incident.

Appellant testified in his own defense, stating that two women were at his house on March 10, 2011, and they were planning to steal his truck. He said that the women had removed the tags from his Bronco and placed them on his truck in furtherance of their plan. He stated, "I heard them out there buzzing [in the mud] and trying to get out. I hopped up over the hill, there's a small hill there, and I could see them out there so I went to get my truck." He explained he found his truck in the garden and "went out there . . . to get it. I got in it and it was stuck. So I was wet and cold. I fell several times going through there on my crutches. I cranked the heater up[,] and that's when the light and power man come [sic] by." He recalled telling the police officer that he "was stuck and just lived around the corner there[,] and [he] was trying to get [his] truck back to the house. I don't remember what I told them." He admitted that he did not tell the officers that someone was trying to steal his truck or that someone switched the vehicles' license plates. Appellant testified that he traveled around his property by driving his "truck or tractor or whatever" but that on this particular night, "[he] walked straight out through the garden and got the truck out."

On cross-examination, appellant testified that two days before the incident, he drove to a local grocery store and met two sisters there, Lisa and Teresa (last names unknown), from West Virginia. He stated that Lisa and Teresa were in their mid-thirties, and while they were all at the store, he and the women decided they would go with him to his house.

Appellant testified that after two days, the women wanted to use his truck to go back to West Virginia. He saw them get into his truck and leave, stealing his truck. He explained that he did not call the police because he had been robbed three times in the past, and "they always have done nothing about it." He further stated, "I heard them out there standing

-4-

around trying to get unstuck. I went to get them myself." He added, "I got my crutches and went up by that cedar tree to see what I could see, the garden, and they were down there at the other end of it and were stuck." Appellant testified he did not mention the women to Sergeant Estepp or Deputy Crum because he felt embarrassed about it, and he admitted he had not seen them since that day.

John Christopher Shirley, a wrecker driver for Dean's Recovery, testified that on March 10, 2011, he was called to tow a Nissan pick-up truck that was mired in mud off the Old Asheville Highway. Mr. Shirley described the weather conditions as being "[w]et outside, dark in that area. I mean, it's one of those nasty nights." When he arrived at the scene, he found the pick-up truck in a ditch just off the side of the road. Mr. Shirley did not see any debris, mud, or tracks on the road as he approached the scene. He further testified that he observed the keys still in the ignition and detected a "real strong smell of alcohol."

## II. Analysis

Appellant raises two issues for our review: whether the evidence underlying the conviction of driving under the influence was sufficient and whether the trial court erred in denying his motion to dismiss. We note that he does not contest his conviction for driving on a revoked license.

### A. Sufficiency of the Evidence

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and

the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

To sustain appellant's conviction for driving under the influence as indicted, the State's evidence must have proven beyond a reasonable doubt that appellant was in physical control of an automobile or motor-driven vehicle on a public road or highway of the state or any other premises that is generally frequented by the public at large while under the influence of an intoxicant, namely alcohol. Tenn. Code Ann. § 55-10-401(a)(1). Specifically, appellant contends that the State failed to prove that he was "found on a public road or highway." He further argues that the State should have presented the testimony of an expert witness to establish the boundaries of the roadway, the right-of-way, and his property.

This court has opined that

> [t]he crime of driving under the influence is a continuing offense. Our Supreme Court has sustained convictions for driving under the influence even though no one saw the car in motion or saw the accused driving the car. Like any other crime, driving under the influence of an intoxicant can be established by circumstantial evidence.

*State v. Ford*, 725 S.W.2d 689, 690-91 (Tenn. Crim. App. 1986) (internal citations omitted); *see also State v. Butler*, 108 S.W.3d 845, 852 (Tenn. 2003) (affirming conviction for driving under the influence when appellant was first observed walking in a parking lot of a store). Thus, it was not necessary that the State prove that appellant was actually found on a public road or highway, as long as the State proved by circumstantial evidence that appellant had been in physical control of his truck on a public road or highway. In addition, it was not necessary for the State to present an expert witness to testify with regard to boundary lines.

The State's evidence included testimony from two law enforcement officers. Contrary to appellant's assertion in his brief, Sergeant Estepp testified that she observed muddy tire

tracks on the road leading to the location at which appellant's truck came to rest. Deputy Crum testified that he concluded from the compressed grass on the side of the road that tire tracks had made the impression in the grass and that the truck must have veered from the roadway. Although conflicting testimony from other witnesses was presented, the jury reconciled all factual disputes in favor of the State. *Bland*, 958 S.W.2d at 659. We will not re-weigh the evidence or the credibility of the witnesses on appeal. *Dorantes*, 331 S.W.3d at 379. The State presented sufficient circumstantial evidence from which the jury concluded that appellant had operated his vehicle on a public road or highway at some time during the continuing offense. Appellant is not entitled to relief on this issue.

### B. Motion to Dismiss

At trial, appellant filed a motion to dismiss the charges against him on the basis that Sergeant Estepp failed to fulfill the statutory duty to file an accident report pursuant to Tennessee Code Annotated section 55-10-108(b). The State counters that dismissal of the indictment is not an available remedy for violation of the statute. We agree with the State.

The question raised by appellant's motion to dismiss is one of law, which we review de novo with no presumption of correctness attributed to the trial court's conclusions. *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008) (citing *State v. Thompson*, 197 S.W.3d 685, 690 (Tenn. 2006)).

Tennessee Code Annotated section 55-10-108(b)(1) provides:

> Every law enforcement officer who, in the regular course of duty, investigates a motor vehicle accident, whether the accident has occurred on a highway within this state or on privately owned real property, either at the time of and at the scene of the accident or thereafter, by interviewing the participants or witnesses, shall, within seven (7) calendar days after completing the investigation, forward a written report of the accident to the department, and a copy thereof shall be kept in the various district offices of the Tennessee highway patrol.

Sergeant Estepp testified at the hearing on the motion to dismiss that she did not observe any damage to appellant's vehicle and that absent any damage, officers are not required to complete an accident report.

The term "motor vehicle accident" "contemplates any situation occurring . . . wherein [a] driver so operates his automobile as to cause injury to the property or person of another[2] . . . ." *Black's Law Dictionary* 15 (6th ed. 1991). This definition of "accident" has been cited with approval by this court in a case involving leaving the scene of an accident. *See State v. Ronald D. Correll*, No. 03C01-9809-CC-00318, 1999 WL 812454, at *6 (Tenn. Crim. App. Oct. 8, 1999).[3] "When statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would extend the meaning of the language and, in that instance, we enforce the language without reference to the broader statutory intent, legislative history, or other sources." *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009). Clearly, the plain meaning of "motor vehicle accident" does not include an incident such as this one with no property damage or bodily injury. Sergeant Estepp was not required to complete an accident report, and the trial court properly denied appellant's motion to dismiss on this basis.

Even if she had been so required, appellant would not be entitled to dismissal of the charges against him as a remedy. Section 55-10-108(b) of the Tennessee Code does not provide for dismissal of criminal offenses as a remedy for violation of the statutory duty, and our research has failed to find any Tennessee statute or case granting dismissal as a remedy. Appellant is not entitled to relief on this issue.

## CONCLUSION

Following our review of the record, we affirm the judgment of the trial court. We remand the case for entry of corrected judgments on counts four and five reflecting a disposition of count one (driving under the influence) and count two (driving on a revoked license). The corrected judgments should reflect merger of count one into count five and count two into count four. On remand, the trial court should also enter a judgment disposing of the third count of the indictment, violation of the implied consent statute.

_____
ROGER A. PAGE, JUDGE

---

[2] Of course, in this case there was no property damage to the property of another or to appellant's own vehicle.

[3] The full definition of "accident" cited in *Ronald D. Correll* contains the limitation of a "situation occurring on a highway . . . ." The limiting language has been omitted in this opinion because the statute in question, Tennessee Code Annotated section 55-10-108(b)(1), by its own language applies whether the accident occurs on a highway or on private property. However, we conclude that the substance of the definition of "accident" is applicable to this case.