**STATE of Tennessee**

v.

**Travis THOMPSON, et al.**

Supreme Court of Tennessee,
at Nashville.

Feb. 1, 2006 Session.

July 21, 2006.

Reconsideration Overruled Aug. 8, 2006.

Paul G. Summers, Attorney General and Reporter, Russell T. Perkins, Deputy At-

torney General, and Stephen R. Butler, Assistant Attorney General, Nashville, Tennessee, for Appellant, the State of Tennessee.

William B. Jakes, III, Nashville, Tennessee, for Appellees, Travis Thompson, et al.

## OPINION

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., E. RILEY ANDERSON, JANICE M. HOLDER, and CORNELIA A. CLARK, JJ., joined.

This Court granted the application for permission to appeal in this case pursuant to Tennessee Rule of Appellate Procedure 11 to determine whether the Equal Access to Justice Act ("the Act") permits the award of attorney's fees in the amount of the statutory cap to more than one party if there are multiple prevailing parties and whether the Act allows the court to award post-judgment interest which exceeds the statutory cap. We hold that the Act's $10,000 limitation for attorney's fees applies to each prevailing party, that the limitation applies to each stage of the litigation, and that the Act allows a trial court to award post-judgment interest even if the total award exceeds the statutory cap. We therefore conclude that the Court of Appeals erred in setting aside the second award of attorney's fees and the award of post-judgment interest. Accordingly, the judgment of the Court of Appeals is reversed, and the judgment of the trial court is affirmed.

## I. *Factual and Procedural Background*

The State of Tennessee filed a complaint on July 16, 1999; the complaint stated that it was brought "at the request of Mark Williams, Director of the Division of Consumer Affairs of the Tennessee Department of Commerce and Insurance." It was filed against two defendants: Travis Thompson ("Thompson") and Thompson Enterprises, LLC ("the LLC"). Thompson is a resident of Antioch, Tennessee, and the LLC is a company that does business in Tennessee.

Each of the defendants was accused of violating the Tennessee Consumer Protection Act of 1977, Tennessee Code Annotated Title 47, Chapter 18, Part 1, and the Tennessee Health Club Act, Tennessee Code Annotated Title 47, Chapter 18, Part 3. The complaint, as subsequently amended, alleged that in the spring of 1999, for a period of approximately three months, Thompson operated a health club ("Gold's Gym") without a valid certificate of registration. The complaint also alleged that for approximately one week Gold's Gym was operated by the LLC (created on June 24, 1999) without a valid certificate of registration. Thompson was President of the LLC and a 34% owner. Both Thompson and the LLC meet the financial requirements for classification as a "small business" under Tennessee Code Annotated section 29–37–103(2).

The complaint sought civil penalties "of not more than one thousand dollars ($1,000) per violation to the State as provided by Tenn.Code Ann. § 47–18–108(b)" against each of the defendants. The plaintiff also sought refunds of more than $900,000 on behalf of customers of Gold's Gym who were allegedly damaged by the defendants' operation of Gold's Gym while it was unregistered.[1]

1. The complaint stated that Thompson purchased approximately 3,000 membership agreements from another health club while Gold's Gym was still unregistered and that

The defendants applied for a certificate of registration for Gold's Gym on June 22, 1999, and such certificate was issued to them on July 1, 1999. The defendants do not contest that each of them was liable for a $1,000 civil penalty for the respective periods of time during which each of them operated Gold's Gym prior to obtaining a certificate of registration from the Department of Commerce and Insurance.

A trial on the contested issues was conducted in February of 2001. At the conclusion of the State's proof, the trial court directed a verdict in favor of the defendants. In a "Memorandum and Order" issued by the trial court on August 24, 2001, it awarded the defendants $10,000 in attorney's fees because it found that:

> Plaintiff's counsel has admitted to the Court (in a hearing on February 2, 2001) that from the day the lawsuit was filed not a single consumer had ever complained or alleged ascertainable loss due to the defendants' brief period of not being registered. The plaintiff also stated that it had not made any effort to locate witnesses to support the restitution claims until three weeks before the trial. The Court concludes that the plaintiff's claim against the defendants for restitution for ascertainable loss to consumers was unsupported by substantial evidence.
>
> Fees incurred by the defendants easily exceed the maximum recovery of $10,000 authorized by Tenn.Code Ann. § 29-37-104.

The trial court imposed fines of $1,000 each on Thompson and the LLC for being unregistered by the State for a period of three months. The Court noted that on

March 14, 2000, the defendants had made an offer of judgment in the amount of $2,000 and that the defendants were the prevailing parties in the matter because they had prevailed on sixteen of the seventeen theories asserted by the State.

In its first opinion in this case, the Court of Appeals upheld the award of $10,000 in attorney's fees to the defendants, determining that the trial court had accurately found that the defendants were the prevailing parties and that the conditions in the Equal Access to Justice Act for an award had been met, specifically Tennessee Code Annotated section 29-37-104. *State v. Thompson,* No. M2001-02354-COA-R3-CV, 2003 WL 1442417, at *8-9 (Tenn.Ct.App. March 20, 2003). It then reversed the trial court's determination that only consumers could pursue remedies under the Tennessee Health Club Act but found that this holding did not help the State because "the State has not proffered evidence to support the award of any further relief." *Id.* at *7.

Following a remand to the trial court, the defendants filed a motion for an award of additional attorney's fees based on fees they had incurred on appeal, and they sought post-judgment interest with respect to the trial court's order dated August 24, 2001, awarding them attorney's fees. The trial court issued an order on August 11, 2003, granting these requests in the amount of $10,000 ($5,000 to each defendant) and directing the State through a writ of mandamus to pay post-judgment interest from the date of the award through June 2, 2003, at the rate of ten percent per annum.[2]

before this time Gold's Gym had about 600–700 members, adding about 25 new members per month.

**2.** We note that this additional award brought the total award of attorney's fees granted to

the defendants to a total of $20,000–$10,000 for attorney's fees incurred at trial and $10,000 for attorney's fees incurred on appeal.

The State filed a motion requesting that the trial court reconsider its August 11, 2003, order. On October 2, 2003, the trial court filed an order vacating issuance of the peremptory writ of mandamus but otherwise affirming its previous orders. In its second opinion in this case, the Court of Appeals reversed the trial court's second grant of attorney's fees and its award of post-judgment interest.

## II. *Standard of Review*

■ The issues regarding the statutory limit of awards under the Equal Access to Justice Act are questions of law; therefore, the standard of review is de novo with no presumption of correctness given to the trial court's conclusions. *See Teter v. Republic Parking Sys., Inc.*, 181 S.W.3d 330, 337 (Tenn.2005) (citing *Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn.2000) and *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995)). The trial court's findings of fact upon which our conclusions are premised are reviewed de novo upon the record, accompanied by a presumption of correctness, unless the evidence preponderates otherwise. *See* Tenn.R.App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993) (citing *Tenn–Tex Properties v. Brownell–Electro, Inc.*, 778 S.W.2d 423, 425 (Tenn.1989)).

## III. *Analysis*

### A. Attorney's Fees

The principal operative provisions of the Equal Access to Justice Act include the following:

(a)(1) Unless otherwise provided by law, the court having jurisdiction over the civil action brought by a state agency or over an action for judicial review brought pursuant to § 4–5–322, may award reasonable and actual fees and other expenses not to exceed ten thousand dollars ($10,000) to the prevailing party unless the prevailing party is a state agency.

. . . .

(b)(1) The court may make an award pursuant to the terms of this chapter only if the small business has demonstrated by a preponderance of the evidence that the actions of the state agency were not supported by substantial evidence or were arbitrary and capricious or were brought in bad faith for the purpose of harassment. The court may, in its discretion, decline to make an award if it finds special circumstances exist that would make an award unjust.

. . . .

(c)(1) In a civil action commenced by a state agency ... a small business, in order to be eligible to make a claim for fees and other expenses under this chapter, must file a claim with the court within thirty (30) days after a final judgment has been rendered.

Tenn.Code Ann. § 29–37–104 (2000).

The Act was promulgated to protect small businesses.[3] A small business is defined, in pertinent part, as:

(i) A *natural person* who is licensed by one (1) or more state agencies or boards and whose claim under this chapter

---

**3.** Tenn.Code Ann. § 29–37–102 (2000):

There are occasions when inequities exist between government and small business in terms of the ability with which each is able, without economic hardship, to be properly represented in administrative proceedings and in the courts. As part of the general assembly's continuing efforts to assure fairness and equity to all the citizens of this state, it is the intent of this chapter to offer small business an opportunity for adequate representation in any administrative hearing involving the operation of such business and, where necessary, in the resulting appeal process.

arises from such licensing, but the person shall not have a net worth of more than three hundred thousand ($300,000) at the time the civil action is filed;

(ii) A *sole proprietor* of an unincorporated business that meets each of the following conditions:

(a) Whose annual gross receipts do not exceed one million dollars ($1,000,000) during the twelve (12) months immediately preceding the date the civil action was filed; and

(b) Who does not employ more than fifteen (15) persons on a full-time basis on the date the civil action was filed; or

(iii) A *partnership or corporation* that meets each of the following conditions:

(a) Whose annual gross receipts do not exceed two million dollars ($2,000,000) during the twelve (12) months immediately preceding the date the civil action was filed; and

(b) Who does not employ more than thirty (30) persons on a full-time basis on the date the civil action was filed. . . .

Tenn.Code Ann. § 29–37–103(3) (2000) (emphasis added).

■ The plaintiff contends that the Act does not apply to this case because the plaintiff is not a "state agency" as defined in Tennessee Code Annotated section 29–37–103(4). The statute provides that a state agency "means any entity of the state as defined in § 4–5–102(2)." Tenn. Code Ann. § 29–37–103(4). Section 4–5–102(2) (2005) provides:

(2) "Agency" means each state board, commission, committee, *department, officer, or* any other unit of state government authorized or required by any statute or constitutional provision to make rules or determine contested cases.

(emphasis added). Because this suit was brought on behalf of the Department of Commerce and Insurance, a "department" as provided in section 4–5–102(2), and because it was filed by and through the Attorney General, a state officer under the Tennessee Constitution and for the purposes of section 4–5–102(2), the Act applies to this case.

■ The Act's primary benefit is its provision authorizing an award of up to $10,000 in reasonable and actual attorney's fees and other expenses "to the prevailing party unless the prevailing party is a state agency." Tenn.Code Ann. § 29–37–104(a)(1). With respect to a case that involves multiple defendants, each of which qualifies as a "small business" under the Act, we find nothing in the language of the Act requiring or authorizing application of the $10,000 limit to such small businesses as a group, rather than to each individual small business. In cases involving multiple parties, each of which is a "small business" for purposes of the Act, the $10,000 limit applies with respect to each such small business, and not to those businesses as a single prevailing party.[4]

■ The plaintiff asserts that interpreting the Act in this manner constitutes an impermissible encroachment upon sovereign immunity. *See, e.g., Matter of Harris,* 849 S.W.2d 334, 336 (Tenn.1993). The Act is, at its essence, a permissible impingement on sovereign immunity, designed to discourage the State and local governments from bringing actions against small businesses that are "not supported by substantial evidence or [are] arbitrary and capricious or [are] brought in bad faith for the purpose of harassment." Under Article I, section 17 of the Tennessee Constitution, sovereign immunity may be

---

4. This holding is consistent with the purpose of the Act, which is to provide "fairness and equity" and to minimize "economic hardship" for small businesses.

waived "as the Legislature may by law direct." *See Sanders v. Traver,* 109 S.W.3d 282, 284 (Tenn.2003); Tenn.Code Ann. § 29–37–104(b)(1). An award of attorney's fees is authorized only in actions that fall within the foregoing characterization. Applying the $10,000 limit to each individual small business furthers the announced intent and purpose of the Act.

██ The plaintiff contends that, even if the Act is interpreted as provided above, this case involves only one small business.[5] This theory is contrary to the allegations in the plaintiff's complaint and to the findings of the trial court. Thompson is a "natural person" under section 29–37–103(3)(A)(i) and/or a "sole proprietor" for purposes of section 29–37–103(3)(A)(ii), and both Thompson and the LLC operated the health club as a small business.[6] Both Thompson and the LLC also fulfill the financial requirements of the definition of "small business."[7] Furthermore, both Thompson and the LLC were each fined for operating without a license. Accordingly, the evidence does not preponderate against the finding that this case involves two "small businesses" for purposes of the $10,000 limit in the Act.

5. As indicated above, Thompson owns 34% of the LLC. Whether he and the LLC would be treated as separate small businesses if he owned a majority interest or a controlling interest is a question we need not address here.

6. The plaintiff does not contest the status of the LLC as a "small business." Included within the definition of a small business under section 29–37–103(3)(A)(iii) is a "partnership or corporation" that meets certain financial conditions. The 1984 enactment of the Act pre-dated the "Tennessee Limited Liability Company Act," Tennessee Code Annotated sections 48–201–101, et seq., which authorized the creation in Tennessee of limited liability companies, a hybrid of partnerships and corporations. A limited liability company created under this legislation, or comparable legislation in other states, qualifies as a "part-

█ In addition, we note that the last sentence in Tennessee Code Annotated section 29–37–102 provides that "it is the intent of this chapter to offer small business an opportunity for adequate representation in any administrative hearing involving the operation of such business *and, where necessary, in the resulting appeal process.*" (emphasis added). Nothing in the language of the Act requires application of the $10,000 limitation to litigation as a whole, instead of to each separate stage of the litigation. We find that in those cases in which attorney fee awards are authorized under the Act, the $10,000 limitation for awards of attorney's fees is applicable to each stage of the litigation, i.e., the administrative hearing, the trial level, an appeal as of right, and an appeal by permission.

### B. *Post–Judgment Interest*

█ The defendants claim entitlement to post-judgment interest with respect to the trial court's awards of attorney's fees, while the plaintiff asserts that the statutory provisions providing for post-judgment interest do not apply to awards under the Act.

nership or corporation" for purposes of the definition of a "small business" in the Act.

7. For a natural person to meet the financial requirements, the person shall not have a net worth of more than $300,000 at the time the action is filed; for a sole proprietor to meet the financial requirements, his annual receipts must not exceed $1,000,000 during the year prior to the filing of the civil action; and for a partnership or corporation to meet the financial requirements, the company's annual gross receipts may not exceed two million dollars prior to the date the civil action was filed. *See* Tenn.Code Ann. § 29–37–103(3). Travis Thompson did not have a net worth of more than $300,000 at the time the action was filed and the LLC had gross receipts not exceeding one million dollars during the year prior to the filing of this action, thereby meeting those financial requirements.

Tennessee Code Annotated section 47–14–122 (2001) provides:

> Interest shall be computed on every judgment from the day on which the jury or the court, sitting without a jury, returned the verdict without regard to a motion for a new trial.

Such interest on judgments is to be computed at the effective rate of "ten percent (10%) per annum, except as may be otherwise provided or permitted by statute." Tenn.Code Ann. § 47–14–121.

In *Varnadoe v. McGhee,* the Court of Appeals noted that although the post-judgment interest statute used the word "verdict," in the case of a non-jury trial, the interest should run from the date of entry of the court's judgment. 149 S.W.3d 644, 649 (Tenn.Ct.App.2004) *perm. app. denied* (Tenn. Oct. 4, 2004). The Court also noted that:

> A party's right to post-judgment interest is based on its entitlement to the use of proceeds of a judgment. The purpose of post-judgment interest is to compensate a successful plaintiff for being deprived of the compensation for its loss between the time of the entry of the judgment awarding the compensation until the payment of the judgment by the defendants. Accordingly, a party who enjoys the use of funds that should have been paid over to another party should pay interest on the retained funds.
>
> The right to post-judgment interest is statutory.... This statute [i.e., § 47–14–122] is mandatory and trial courts are not free to ignore it. The failure of a trial court's judgment or decree to speci-

fy post-judgment interest does not abrogate the obligation imposed by the statute.

*Id.* at 650 (quoting *Kinard v. Kinard,* M2000–00674–COA–R3–CV, 2002 WL 970421, at *3–4 (Tenn.Ct.App. May 10, 2002)) (citations omitted).

In addition to the Act's legislative intent, the Act also has a corrective aspect designed to discourage state and local government entities from taking overly aggressive litigation actions against small businesses.[8] In this regard, we emphasize that awards of attorney's fees are not authorized in all actions in which the government entity is the unsuccessful party, but only in cases in which "the actions of the [governmental entity] were not supported by substantial evidence or were arbitrary and capricious or were brought in bad faith for the purpose of harassment." Tenn.Code Ann. § 29–37–104(b)(1). The purposes of the Act would be thwarted if post-judgment interest was not allowed on maximum awards made thereunder; the award would steadily shrink in economic value during the often lengthy time between the making of an award and the date the award is actually paid.[9]

### CONCLUSION

We hold that in a case in which there are multiple prevailing parties, each of which is a "small business" under the Equal Access to Justice Act's definition of such term, the $10,000 limit is to be applied to each such small business, and not to the businesses as a whole. We also hold that this $10,000 limitation should be ap-

---

8. "[T]o assure fairness and equity to all the citizens of this state ... [and] to offer small business an opportunity for adequate representation in any administrative hearing involving the operation of such business and, where necessary, in the resulting appeal process." Tenn.Code Ann. § 29–37–102.

9. Based on the Act's purpose and intent, we decline to apply to the Act the rationale of *Staggs v. National Health Corp.,* 924 S.W.2d 79, 82 (Tenn.1996), in which this Court determined that an award of discretionary costs was not a "judgment" for purposes of Tennessee Code Annotated section 47–14–122.

plied to each separate stage of the litigation. Furthermore, awards of post-judgment interest are appropriate with respect to awards under the Act, including awards in the amount of the statutory limit. We therefore reverse the judgment of the Court of Appeals and reinstate the trial court's judgment awarding an additional $10,000 in attorney's fees and post-judgment interest. This case is remanded to the trial court for the calculation of post-judgment interest in accordance with this opinion. Costs are taxed to the State of Tennessee.