# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
June 11, 2013 Session

## WILLIAM J. DENNING v. CSX TRANSPORTATION, INC.

**Direct Appeal from the Circuit Court for Sumner County**
**No. 25993C      C. L. Rogers, Judge**

---

**No. M2012-01077-COA-R3-CV - Filed October 9, 2013**

---

This appeal arises from a jury verdict in favor of Plaintiff in an action filed pursuant to the Federal Employers' Liability Act ("FELA"). Defendant appeals denial of its motion for judgment notwithstanding the verdict and the trial court's determination that post-judgment interest is properly awarded in the amount provided by Tennessee Code Annotated § 47-14-121 and not federal law. On cross-appeal, Plaintiff appeals the trial court's decision to exclude certain evidence and its determination that post-judgment interest is properly calculated from the date the trial court entered judgment on the jury verdict rather than the date the jury rendered its verdict as provided by Tennessee Code Annotated § 47-14-122. We affirm denial of Defendant's motion for judgment notwithstanding the verdict and the trial court's evidentiary decisions. We also affirm the trial court's determination that post-judgment interest is properly awarded at the rate provided by Tennessee Code Annotated § 47-14-121. We reverse the trial court's determination that post-judgment interest accrues from the date provided by federal law. We hold that state law controls the calculation of post-judgment interest to be awarded in FELA actions adjudicated in state court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part, Reversed in part and Remanded

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Christopher W. Cardwell and Mary Taylor Gallagher, Nashville, Tennessee, Andrew E. Tauber, Washington, DC and Kendra L. Smith Canonsburg, PA, for the appellant, CSX Transportation, Inc.

James Bryan Mosely, Murfreesboro, Tennessee and Joshua Leizerman, Toledo, Ohio, for the appellee, William J. Denning.

## OPINION

Plaintiff/Appellee William J. Denning (Mr. Denning) was employed by Defendant CSX Transportation, Inc. ("CSXT") from 1963 through 2001, initially as a brakeman and, from 1978, as an engineer. In September 2004, Mr. Denning commenced an action against CSXT in the Circuit Court for Sumner County pursuant to the Federal Employers' Liability Act ("FELA"), codified at 45 U.S.C. §§ 51 et. seq., the Safety Appliance Act, codified at 49 U.S.C. § § 20301 et seq.; the Locomotive Inspection Act, codified at 49 U.S.C. § § 20701 et seq; and Title 49, Chapter II, Part 229 - Railroad Locomotive Safety Standards, Subpart C - Safety Requirements, § § § 229.41, 229.43, and 229.45. In his complaint as amended in March 2006, Mr. Denning alleged that CSXT's intentional conduct and negligent acts and omissions caused him to suffer injuries including cancer, asthma, neurological impairment, pulmonary diseases and other disorders resulting from exposure to asbestos, diesel exhaust and other carcinogens. He enumerated twelve alleged negligent acts and omissions, including violations of the Safety Appliance Act, the Locomotive Inspection Act, and Railroad Locomotive Safety Standards. Mr. Denning prayed for damages in an amount to exceed $25,000, punitive damages, attorneys' fees and costs. Considerable pre-trial proceedings, including a May 2007 *McDaniel* hearing, resolved the majority of Mr. Denning's claims. In November 2007, the trial court denied CSXT's motion in limine to preclude Mr. Denning from introducing evidence that exposure to diesel caused him to suffer Chronic Obstructive Pulmonary Disease ("COPD"). That claim was heard by a jury on November 5, 2007. The parties filed cross-motions for a mistrial, which the trial court granted in December 2007.

In February 2008, Mr. Denning moved the trial court to reconsider its ruling following the 2007 *McDaniel* hearing that Mr. Denning's arguments that stomach and esophageal cancer can be caused by exposure to diesel exhaust were inadmissible. The trial court denied this motion by order entered April 14, 2008. In November 2011, Mr. Denning's claim that CSXT negligently caused him to be exposed to diesel exhaust that resulted in COPD was again heard by a jury.

Following a four-day trial, on November 18, 2011, the jury returned a verdict in favor of Mr. Denning, finding that CSXT had violated the Locomotive Inspection Act. The jury determined that Mr. Denning had suffered damages in the amount of $250,000. The jury also determined that Mr. Denning was 90 percent at fault for his injuries. Following proposed judgments by the parties that differed with respect to the date from which post-judgment interest rightfully accrued, the trial court adopted the jury's finding that CSXT had violated the Locomotive Inspection Act and concluded that allocation of fault principles therefore did not apply. It also adopted Mr. Denning's argument that post-judgment interest should accrue pursuant to Tennessee Code Annotated § § 47-14-121 & 122, and awarded Mr. Denning

post-judgment interest in the amount of ten percent per annum from the date of the jury's verdict.[1]  The trial court entered judgment on verdict on December 12, 2011.

In January 2012, CSXT filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial.  It also moved the trial court to alter or amend the judgment to limit Mr. Denning's recovery of post-judgment interest to the prevailing federal rate of .12 percent to be calculated beginning December 2, 2011, the date the trial court entered judgment on the jury verdict.  By order entered April 4, 2012, the trial court denied CSXT's motion for a judgment notwithstanding the verdict or a new trial.  The trial court held CSXT's motion to alter or amend in abeyance and granted CSXT ten days to supply law to support its argument that the federal law should control the rate and accrual date of post-judgment interest.  By order entered May 1, 2012, the trial court granted in part and denied in part CSXT's motion to alter or amend.  The trial court concluded that, pursuant to applicable federal law, interest should be calculated from December 12, 2011, the date it entered judgment on the jury verdict. Noting that CSXT had offered no statutory or case law to support its position that the federal post-judgment interest rate was applicable in a FELA action in state court, the trial court concluded that Mr. Denning was entitled to the State post-judgment interest rate of ten percent per annum.  CSXT filed a timely notice of appeal to this Court.

---

[1]As amended effective July 1, 2012, Tennessee Code Annotated § 47-14-121currently provides, in relevant part:

> (a) Except as set forth in subsection (c), the interest rate on judgments per annum in all courts, including decrees, shall:
> (1) For any judgment entered between July 1 and December 31, be equal to two percent (2%) less than the formula rate per annum published by the commissioner of financial institutions, as required by § 47-14-105, for June of the same year; or
> (2) For any judgment entered between January 1 and June 30, be equal to two percent (2%) less than the formula rate per annum published by the commissioner of financial institutions, as required by § 47-14-105, for December of the prior year.

Tenn. Code Ann. § 47-14-121(a)(2013).  Tennessee Code Annotated § 47-14-122 provides:

> Interest shall be computed on every judgment from the day on which the jury or the court, sitting without a jury, returned the verdict without regard to a motion for a new trial.

### Issues Presented

The issues raised for our review, as presented by CSXT, are:

1. Whether defendant CSX Transportation, Inc. ("CSXT") was entitled to a judgment notwithstanding the verdict, when plaintiff William Denning's only evidence of general and specific causation was opinion testimony from his treating physician, who lacked any scientific basis for his opinions.

2. Whether the trial court erred when, in a case brought under the Federal Employer's Liability Act, it applied Tennessee law, rather than federal law, as to post-judgment interest?

Mr. Denning raises two additional issues on cross-appeal:

1. Whether the trial court erred by not awarding interest in accordance with Tenn. Code Ann. § 47-14-122.

2. Whether the trial court erred by excluding evidence that diesel exhaust can cause esophageal cancer.

### Standard of Review

A Tennessee Rule of Civil Procedure 50.02 motion for judgment notwithstanding the verdict is subject to the review applicable to a Rule 50.01 motion for directed verdict. *Walker v. CSX Transp., Inc.*, No. M2010-00932-COA-R3-CV, 2011 WL 578780, at *2 (Tenn. Ct. App. Feb. 16, 2011)(citations omitted). The motions may be granted "only when the evidence in the case is susceptible to but one conclusion." *Childress v. Currie*, 74 S.W.3d 324, 328 (Tenn.2002)(citation omitted). On appeal, we review the trial court's determination *de novo*, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor. *Biscan v. Brown*, 160 S.W.3d 462, 470 (Tenn. 2005)(citations omitted). Similarly, the determination of whether federal or state law is applicable is a question of law which we review *de novo*, with no presumption of correctness for the determination of the trial court. *See Morgan Keegan & Co. v. Smythe*, 401 S.W.3d 595, 602 (Tenn. 2013)(whether an action is preempted by federal law is a question of law that appellate courts review *de novo*).

*Discussion*

As noted above, Mr. Denning brought this cause of action under FELA, and the jury's award of damages to Mr. Denning arises from the jury's finding that CSXT violated the Locomotive Inspection Act ("LIA"). The LIA provides, in relevant part:

> A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances-
> > (1) are in proper condition and safe to operate without unnecessary danger of personal injury;
> > (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
> > (3) can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C. § 20701.[2] The United States Supreme Court has concluded that the LIA "'manifest[s] the intention [of Congress] to occupy the entire field of regulating locomotive equipment[.]'" *Kurns v. R.R. Friction Prods. Corp.*, 132 S. Ct. 1266 (U.S. 2012)(quoting *Napier v. Atlantic Coast Line R. Co.*, 272 U.S. 605, 611, 47 S. Ct. 207 (1926)). The LIA does not confer a separate cause of action, but "merely makes violation of its prohibitions 'unlawful.'" *Urie v. Thompson*, 337 U.S. 163, 188, 69 S.Ct. 1018, 1034 (1949). It "supplements the Federal Employers' Liability Act by imposing on interstate railroads 'an absolute and continuing duty' to provide safe equipment." *Id.* (quoting *Lilly v. Grand Trunk Western R. Co.*, 317 U.S. 481, 485, 63 S.Ct. 347, 350-51(1943)). A violation of the standards imposed by the LIA constitutes negligence *per se*. *Id*. at 189.

As enacted by Congress in 1906 and amended in 1908, FELA "provide[s] a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer or their fellow employees." *Atchison, Topeka & Sante Fe Ry. Co. v. Buell*, 480 U.S. 557, 561, 107 S.Ct. 1410, 1413 (1987)(footnote omitted). "A primary purpose of [FELA] was to eliminate a number of traditional defenses to tort liability and to facilitate recovery in meritorious cases." *Id.* FELA's coverage is broad, and it "has been construed even more broadly" by the courts. *Id.* at 562. It is "a broad remedial statute" and carriers to which FELA is applicable may not limit their liability under FELA by contract or regulation. *Id.* at 561-62. FELA replaces the duty of master to servant at common-law "with the far

---

[2]A "tender" is a car that carries fuel or water and that is attached to a locomotive. *Kurns v. R.R. Friction Prods. Corp.*, 132 S. Ct. 1265 n.1 (U.S. 2012)(quoting Webster's New International Dictionary of the English Language 2126 (1917)).

more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence." *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 507, 77 S.Ct. 443, 449 (1957). A claim under FELA requires proof that "'(1) the employee was injured in the scope of employment; (2) the employee's employment was in furtherance of the railroad's interstate transportation business; (3) the railroad was negligent; and (4) the railroad's negligence "played some part in causing the injury for which [the employee] seeks compensation under FELA.'" *Mills v. CSX Transp., Inc.*, 300 S.W.3d 627, 631 (Tenn. 2009)(quoting *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 269 (6th Cir.2007)). "[B]oth actual work and acts that are necessarily incidental to actual work" are encompassed within the scope of employment in a FELA action. *Id.* at 632. With this background in mind, we turn to the issues raised on appeal.

### *Denial of CSXT's Motion for Judgment Notwithstanding the Verdict*

As noted above, a motion for judgment notwithstanding the verdict must be considered under the standard applicable to a motion for a directed verdict. A defendant's motion for a directed verdict in a FELA action must be denied where "the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *CSX Transp., Inc. v. McBride*, 131 S.Ct. 2630, 2636 (U.S. 2011)(quoting *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443 (1957)).

In the current case, CSXT does not appeal the jury's determination that it violated standards imposed by the LIA, or that its acts or omissions constituted negligence. Rather, it asserts that the trial court erred by denying its motion for judgment notwithstanding the verdict because Mr. Denning failed to demonstrate causation. Its argument, however, is predicated on its assertion that the trial court erred by admitting the testimony of Dr. Jonathan Evans ("Dr. Evans"), Mr. Denning's treating physician, that exposure to diesel exhaust caused Mr. Denning's COPD. CSXT submits in its brief to this Court that "because Dr. Evans' inadmissible testimony was [Mr.] Denning's only evidence of causation, CSXT was entitled to judgment as a matter of law and the circuit court accordingly erred by denying CSXT's motion for judgment notwithstanding the verdict." CSXT asserts that, under *McDaniel v. CSX Transportation, Inc.*, 955 S.W.2d 257 (Tenn. 1997), the trial court erred by admitting Dr. Evans' testimony that exposure to diesel exhaust caused Mr. Denning's COPD. It asserts that Dr. Evans' testimony that diesel exhaust caused Mr. Denning's COPD was unreliable to establish causation, and that a National Institute of Health ("NIH") study upon which Dr. Evans relied found, "only 'an association' - not a causal relationship - 'between occupational exposure [to] diesel exhaust[] and COPD mortality.'" Relying on toxic tort cases, CSXT further asserts that Dr. Evans' causation testimony was inadequate

where Dr. Evans failed to testify as to how much exposure to diesel exhaust would cause COPD.

We begin our analysis of this issue by observing that "FELA's language on causation . . . 'is as broad as could be framed.'" *McBride*, 131 S.Ct. at 2636 (quoting *Urie v. Thompson*, 337 U.S. at 181, 69 S.Ct. 1018). The Supreme Court has opined that, "in comparison to tort litigation at common law, 'a relaxed standard of causation applies under FELA.'" *Id.* (quoting *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542-543, 114 S.Ct. 2396 (1994)). "'The FELA causation standard is distinct from the usual proximate cause standard[.]'" *Id.* at 2640 (quoting 5 L. Sand et al., Modern Federal Jury Instructions - Civil ¶ 89.02, pp. 89-38, 89-40, and comment (2010)). Thus, CSXT's reliance on toxic tort jurisprudence to establish the proximate causation standard applicable to this case is misplaced.

Further, we review a trial court's decisions to admit or exclude evidence under an abuse of discretion standard. *Biscan v. Brown*, 160 S.W.3d 462, 468 (Tenn. 2005) (citation omitted). A trial court abuses its discretion "only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)(quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). This standard does not permit an appellate court to substitute its judgment for that of the trial court. *Id.* (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)). The abuse of discretion standard "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,'" and thus "'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010) (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

It is well-settled that the role of the trial court as the "gatekeeper" with respect to the admissibility of expert testimony "'is to ensure that 'an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *State v. Scott*, 275 S.W.3d 395, 401-402 (Tenn. 2009)(quoting *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 275 (Tenn. 2005) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999))). The trial court "'must assure itself that the [expert's] opinions are based on relevant scientific methods, processes, and data, and not upon an expert's mere speculation.'" *Id.* at 402 (quoting *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 265 (Tenn. 1997)). The analysis of reliability "has four general inter-related components: (1) qualifications assessment, (2) analytical cohesion, (3) methodological reliability, and (4) foundational reliability." *Id.* When analyzing the science relied upon by

an expert witness, the trial court must consider whether the "'basis for the witness's opinion, *i.e.*, testing, research, studies, or experience-based observations, adequately supports that expert's conclusions' to ensure that there is not a significant analytical gap between the expert's opinion and the data upon which the opinion is based." *Id.* (quoting *State v. Stevens*, 78 S.W.3d 817, 834-35 (Tenn. 2002)). "As part of this analysis, the courts should consider how and why the expert was able to extrapolate from certain data to the conclusions that he or she has reached." *Id*. at 402-403 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 144-46, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997))(footnote omitted). "When assessing the connection between an expert's conclusions and the underlying data upon which those conclusions are based, expert testimony may warrant exclusion where 'there is simply too great an analytical gap between the data and the opinion proffered.'" *Id*. at 403 (quoting *State v. Stevens*, 78 S.W.3d at 834 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. at 146, 118 S.Ct. 512)). The court must also assess the reliability of the expert's methodology and the foundation of the expert's testimony, including the reliability of the underlying data and facts upon which the testimony is based. *Id*. (citing *see* Tenn. R. Evid. 703.)

CSXT's argument in this case, as we perceive it, is that the trial court erred by permitting Dr. Evan's testimony under *McDaniel* and its progeny because the testimony was scientifically unreliable where it relied on an NIH study that did not definitely establish that exposure to diesel exhaust necessarily causes COPD. CSXT submits in its brief, "[o]n cross-examination before the jury however, Dr. Evans admitted that the study does not 'state that. . . diesel exhaust causes COPD.'" CSXT asserts, "[i]ndeed, the study found only 'an association' - not a causal relationship - 'between occupational exposure [to] diesel exhaust[] and COPD mortality.'" It asserts, "the NIH study cannot provide a sufficient basis for the admission of Dr. Evans' general causation opinion."

Upon review of the proceedings before the trial court, we find no abuse of discretion on the part of the trial court in permitting Dr. Evans to testify that, in his opinion, exposure to diesel exhaust caused Mr. Evans' COPD. It is undisputed that Dr. Evans is a board-certified internist and pulmonologist, was an assistant professor at Vanderbilt University, and has been in practice for more than 18 years. At the November 2011 trial of this matter, Dr. Evans testified that he had been treating Mr. Denning since December 2000. He further testified that approximately one-half of his patients have COPD, and that smoking causes approximately 99 percent of COPD found in Middle Tennessee. He testified that Mr. Denning was not a cigarette smoker and that Mr. Denning smoked two or three cigars a day until 1980.

Dr. Evans testified at length about the nature, characteristics and causes of COPD. He testified that, in addition to his studies during his pulmonary fellowship in 1991-1993, he had read "10 or 12 articles culminating with . . . an NIH study, which was a government . .

-8-

. study specifically regarding railroad workers and the impact of developing COPD as a result of exposure to diesel exhaust." Dr. Evans testified that in a study entitled "Chronic Obstructive Pulmonary Disease Mortality in Railroad Workers," the NIH determined that engineers and brakemen were determined to have been exposed to diesel exhaust, and that the study also identified categories of railroad workers who were not exposed to diesel exhaust. He testified that the study was conducted by the Department of Environmental Health of the Harvard School of Public Health, the Channing Laboratory Brigham and Women's Hospital and Harvard Medical School, the Department of Epidemiology of the Harvard School of Public Health, and the Department of Veterans Affairs at Harvard Medical School. Dr. Evans testified at length about the study and its focus, and stated that the study found that "COPD mortality increases with exposure [to diesel exhaust]." He testified that the study concluded that exposure to diesel exhaust has "an additive effect" that increased the likelihood of developing COPD by 2.5 percent per year. Dr. Evans testified that the study considered the effects of smoking and that its findings indicated that diesel exhaust has a greater impact than smoking. He further testified that the "GOLD standard" pulmonary medicine textbooks lists diesel exhaust "as one of the things that cause [COPD]" and that the NIH study "solidified [his] view" that diesel exhaust causes COPD. Dr. Evans testified that, based on the "differential diagnosis" he conducted in Mr. Denning's case, "90-plus percent of what [Mr. Denning] has relates to diesel exhaust."

As CSXT states in its brief, upon extensive cross-examination Dr. Evans acknowledged that the NIH study did not state that diesel exhaust causes COPD, but that the study results established the "association between occupational exposure, diesel exhaust, and COPD mortality." CSXT's argument, as we understand it based on its brief and cross-examination of Dr. Evans, is that the NIH study was unreliable because it concluded that exposure to diesel exhaust caused COPD-related death, but did not definitively state that exposure to diesel exhaust caused COPD. CSXT further asserts that Dr. Evans' statement that the NIH study "solidified" his view should be construed as negating the reliability of the study as a basis for Dr. Evans' testimony. Upon review of the entirety of testimony, we disagree. The weight of Dr. Evans' testimony was a matter properly determined by the jury. Finding no abuse of discretion, we affirm the trial court's evidentiary decision and denial of CSXT's motion for judgment notwithstanding the verdict. We accordingly affirm the jury verdict in this case.

### Exclusion of Evidence Relating to Cancer

We turn next to Mr. Denning's contention that the trial court erred by excluding evidence that diesel exhaust can cause esophageal cancer. Mr. Denning asserts that the parties presented opposing scientific evidence at the *McDaniel* hearing held in May 2007, and that the trial court erred by concluding that his evidence was unreliable. Mr. Denning's

argument, as we understand it, is that the trial court adopted CSXT's argument that his evidence was not sufficient to prove that diesel exhaust can cause, even in part, esophageal cancer. CSXT, on the other hand, asserts Mr. Denning waived this issue where he did not raise it in a motion for a new trial.

We observe that, in his brief to this Court, Mr. Denning asserts the trial court erred by excluding evidence of a causal connection between diesel exhaust and esophageal cancer, but does not request a new trial. Rather, he asserts the jury verdict should be affirmed. In light of this argument and our holding above affirming the jury verdict, Mr. Denning asserts no error which may be relieved on appeal. This issue accordingly is pretermitted.

### *Post-Judgment Interest*

We turn next to the amount and accrual date of post-judgment interest properly awarded in this FELA action in state court. As noted above, the trial court concluded that the accrual date for post-judgment interest was governed by federal law, while the applicable rate of interest was governed by state law. It accordingly awarded Mr. Denning post-judgment interest at the rate of ten percent per annum from December 12, 2011, the date it entered judgment on the verdict. Mr. Denning asserts that post-judgment interest should accrue from the date the jury returned its verdict in accordance with Tennessee Code Annotated § 47-14-122, and that it should be calculated at the rate of ten percent per annum in accordance with Tennessee Code Annotated § 47-14-211. CSXT, on the other hand, asserts post-judgment interest in a FELA action in state court is governed by federal law, and thus should accrue from the date the judgment was entered at the applicable federal rate. Thus, the issue presented by this case is whether post-judgment interest in a FELA action in state court is governed by federal or state law.

We begin our analysis of this issue by noting that state courts must apply federal substantive law when adjudicating claims under FELA. *Monessen Southwestern Ry. Co. v. Morgan*, 486 U.S. 330, 335 108 S. Ct. 1837 (1988). In *Monessen*, the Supreme Court opined that the question of prejudgment interest, which is "part of the actual damages sought to be recovered" to make the plaintiff whole, is governed by substantive federal law. *Id.* The *Monessen* Court held that prejudgment interest was not available in a FELA action where it was not provided in the original Act or in the numerous subsequent amendments. *Id.* at 338. The Court stated that it was "unwilling in the face of such congressional inaction to alter the longstanding apportionment between carrier and worker of the costs of railroading injuries." *Id.* at 339. The *Monessen* Court did not address post-judgment interest, and it is not disputed that post-judgment interest is permitted in actions under FELA.

The parties cite no Tennessee decisions addressing whether post-judgment interest in

a FELA action adjudicated in state court is properly considered a substantive matter governed by federal law or a procedural matter governed by state law, and we find none. Mr. Denning relies on *Louisville & N.R. Co. v. Stewart*, 241 U.S. 261 (1916) for the proposition that state law controls the amount and commencement date of post-judgment interest in this case. CSXT, on the other hand, asserts that application of state law undermines FELA and is contrary to the Supreme Court's analysis in *Monessen*. It asserts, "post-judgment interest is part of the actual damages award that appears in the judgment." Citing *Monessen*, CSXT asserts, 'because post-trial and appellate proceedings sometimes take several years to complete, post-judgment interest can constitute a 'substantial' portion of the overall damages ultimately recovered."

We agree with the majority of our sister jurisdictions that have addressed this issue that an award of post-judgment interest is governed by state law. See *Jacobs v. Dakota, Minnesota & Eastern R.R. Corp.*, 806 N.W.2d 209, 216 (S.D. 2011); *Woods v. Burlington Northern & Sante Fe Ry.*, 104 P.3d 1045, 1048 (Mont. 2004); *Lockley v. CSX Trans, Inc*. 66 A.3d 322 at 327 (Pa. Super. 2013); *Weber v. Chicago and Northwestern Transp. Co.*, 530 N.W.2d 25, 30-31 (Wis. App. 1995); *Cutlip v. Norfolk Southern Corp*., No. L-02-1051, 2003 WL 1861015, at *12 (Ohio App. 2003); *contra Turner v. CSX Transp., Inc*., 878 N.Y.S.2d 543, 545 (N. Y. Sup. 2009) (holding: "post judgment interest constitutes too substantial a part of defendant's potential liability under the FELA to accept the notion that interest calculations are merely procedural in nature."). Contrary to CSXT's assertion that *Monessen* compels the opposite conclusion, the Supreme Court's analysis of the question of pre-judgment interest in *Monessen*, coupled with the Court's early holding in *Stewart*, supports a conclusion that post-judgment interest in FELA actions adjudicated in state court is properly awarded under state law provisions.

In *Stewart*, the Supreme Court considered a jury verdict in favor of the plaintiff arising from a second trial of the plaintiff's action against defendant railroad company. The *Stewart* Court upheld application of Kentucky state law permitting a verdict rendered by nine or more of a twelve-member jury, and also upheld a state court award of post-judgment interest in the amount of ten percent. The Court opined:

> There was no obligation upon the state to provide for a suspension of the judgment, and nothing to prevent its making it costly in cases where ultimately the judgment is upheld. So, the state may allow interest upon a judgment from the time when it is rendered, if it provides appellate proceedings and the judgment is affirmed, as, but for such proceedings, interest would run as of course until the judgment was paid.

*Louisville & N.R. Co. v. Stewart*, 241 U.S. 261, 263, 36 S.Ct. 586, 588 (1916).

More than seventy years later, the *Monessen* Court ruled that prejudgment interest was not allowable in a FELA action because prejudgment interests constitutes part of the actual damages recovered to "make the plaintiff whole." *Monessen*, 486 U.S. at 335. Post-judgment interest, on the other hand, is designed to compensate a successful plaintiff who is deprived of damages awarded to him from the time of the jury's verdict or, in a non-jury case, entry of the trial court's judgment, until paid by the defendant. *State v. Thompson*, 197 S.W.3d 685, 693 (Tenn. 2006)(citations omitted). It is predicated on the plaintiff's right to the use of the proceeds. *Id.* Post-judgment interest compensates a successful plaintiff for the loss of the use of funds rightfully his after the underlying substantive issues have been adjudicated. In Tennessee, the statutory right to post-judgment interest is mandatory, and the trial courts do not have the discretion to ignore it. *Id.*

In *Monessen*, the Supreme Court observed that neither FELA nor the federal general interest statute provide for prejudgment interest. *Monessen*, 486 U.S. at 336 (citing 28 U.S.C. § 1961). It noted that when Congress enacted FELA, prejudgment interest was not allowed in actions for personal injury or wrongful death. *Id.* at 337. The *Monessen* Court further noted that although Congress "expressly dispensed with other common-law doctrines of that era, such as the defense of contributory negligence" in FELA actions, it did not dispense with the "well-established doctrine barring the recovery of prejudgment interest." *Id.* at 337-338. Although Congress has amended FELA several times since 1908, it has not amended it to provide for prejudgment interest. *Id.* at 338-339. The *Monessen* Court stated, "[i]f prejudgment interest is to be available under the FELA, then Congress must expressly so provide." *Id.* at 339 (footnote omitted).

Congress has, on the other hand, enacted legislation governing post-judgment interest, which undisputedly is allowed in a FELA action. Post-judgment interest in civil actions adjudicated in federal court is governed by 28 U.S.C.A. § 1961. The section provides that post-judgment interest shall be calculated from the date the judgment is entered at a rate equal to the weekly average 1-year constant maturity Treasury yield. 28 U.S.C.A. § 1961(a). The section further provides, however, that it "shall not be construed to affect the interest on any judgment of any court not specified in this section." 28 U.S.C.A. § 1961(c)(4).

A procedural rule is one which regulates "'the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them.'" *Hanna v. Plumer*, 380 U.S. 460, 464, 85 S.Ct. 1136, 1140 (1965)(quoting *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14, 61 S.Ct. 422, 426 (1941)). We recognize that, as CSXT asserts, post-judgment interest may add substantially to the amount which an unsuccessful defendant may be required to tender to a successful plaintiff. As

noted above, however, post-judgment interest is designed to compensate a successful plaintiff for the loss of the use of amounts awarded him following an adjudication of substantive law claims in his favor. Additionally, "'a party who enjoys the use of funds that should have been paid over to another party should pay interest on the retained funds.'" *Clark v. Shoaf*, 302 S.W.3d 849, 858-859 (Tenn. Ct. App. 2008)(quoting *State v. Thompson*, 197 S.W.3d 685, 693 (Tenn. 2006)(quoting *Varnadoe v. McGhee*, 149 S.W.3d 644, 649 (Tenn. Ct. App. 2004), *perm. app. denied* (Tenn. Oct. 4, 2004))). When payment is tendered in unconditional satisfaction of the judgment interest no longer accrues on amounts paid. *Id.* at 859; *Vooys v. Turner*, 49 S.W.3d 318, 323 (Tenn. Ct. App. 2001). Of course, if a defendant is successful on appeal the issue becomes moot.

In light of *Monessen*, *Stewart* and the specific provisions of 28 U.S.C.A. § 1961, we agree with Mr. Denning that the amount and accrual date of post-judgment interest is properly governed by state law in FELA actions adjudicated in state courts. Accordingly, post-judgment interest in this case is properly awarded pursuant to Tennessee Code Annotated § § 47-14-121 and 122, as in effect when the jury returned its verdict in November 2011.

### *Holding*

We affirm the trial court's evidentiary rulings and the denial of CSXT's motion for judgment notwithstanding the verdict. We affirm the trial court's award of post-judgment interest at the rate of ten percent per annum pursuant to Tennessee Code Annotated § 47-14-121 as in effect in November 2011. We reverse the trial court's determination that interest should be calculated from the date it entered judgment on the jury's verdict. Consistent with Tennessee Code Annotated § 47-14-122, post-judgment interest in this case should be computed from the day on which the jury returned its verdict.

This matter is remanded to the trial court for modification of the award of post-judgment interest consistent with this Opinion, execution of the judgment, and the collection of costs. Costs on appeal are taxed to the Appellant, CSX Transportation, Inc., and its surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE